# Carmody MacDonald

Carmody MacDonald, P.C.
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105-1705
314-854-8600   Fax 314-854-8660
www.carmodymacdonald.com

Robert E. Eggmann
ree@carmodymacdonald.com
Direct Dial  (314) 854-8638

November 8, 2022

*Sent Via Electronic Mail: gcampbell@hammondshinners.com*

Greg A. Campbell, Esq.
Hammond and Shinners P.C
13205 Manchester Rd.
Des Peres, MO 63131

**Re: Alleged Pension Withdrawal Liability Assessed for Environmental Resources, Inc.**

Dear Mr. Campbell,

Please be advised that our firm represents Environmental Resources, Inc. ("ERI"). I am writing in response to a letter sent from your law firm on August 22, 2022 to ERI.

The letter alleges that ERI client owes $374,822 in withdrawal liability to the Pension Fund after it chose to terminate its affiliation with local unions upon contract expiration. First, we are surprised to receive the letter at all. Section 13.1 of the Collective Bargaining Agreement dated March 1, 2019 (the "Agreement") provides in part that "[w]ithin thirty (30) days after any such notice [the termination notice] is received, a committee of representatives of the respective parties hereto shall meet and endeavor to come to an agreement on any matters in issue, and during the negotiations that follow with respect hereto there shall be no strike or stoppage of work." Withdrawal liability clearly seems to be a "matter at issue" and not such meeting has ever taken place despite the fact that ERI served the termination notice on or about January 3, 2022.

In addition to the above, ERI maintains that the estimation of liability you have proffered is the result of a calculation that is not your "best estimate" of anticipated experience as the term is defined in 29 U.S.C. § 1393(a)(1). We take the position that the Pension Trust's calculation of liability is inflated by the use of interest rates that do not reflect the actual best estimate of the interest generated by the pension assets.

According to the Pension Fund's Annual Funding Notice, the plan was over 100% funded for the year of withdrawal. Yet you concurrently claim that the plan has been underfunded during the years that ERI participated in it and that it is proportionally responsible for $375,000 of the

{23228/00000/3577066.DOCX.}

# Carmody MacDonald

liability. There is a clear inconsistency between reporting that the plan is fully funded and simultaneously demanding $375,000 from a withdrawing member for unfunded vested benefits. If the plan is fully funded, as the funding report suggests, then the assets of the plan are sufficient to fund vested benefits. ERI diligently contributed to the plan during its years that it contracted with the Construction Laborers Pension Trust of Greater St. Louis. The company has contributed over $400,000 to the fund and is a large part of the reason that the pension was fully funded upon its exit. Based on this, there must be some discrepancy with the calculations you have used to assess withdrawal liability.

While the documents you have provided to my client do not explain the interest rate assumption used in calculating withdrawal liability, we presume that the "Segal Blend" is used given that they are the actuary. As you may know, recent case law has rejected the use of the Segal Blend for withdrawal liability calculations.[1] We believe this existing authority will give us a strong basis to challenge your estimate of withdrawal liability in future proceedings. As such, Environmental Resources, Inc. is choosing to exercise its right of review of the calculations described in your notice of withdrawal liability. We request (1) a re-calculation of withdrawal liability using an interest rate that reflects the "best estimate" of growth and (2) the documents listed below. The documents we request are necessary for us to exercise our right of review. In the absence of this information, we are unable to fully and precisely "identify any inaccuracy in the determination of the unfunded vested benefits liability allocable to Environmental Resources," as is granted to us in our right to review.

We respectfully request the following information to review your determination of liability:

- Documents showing the yearly rate of return on asset investments for all years that the pension trust has operated.
- Actuarial documents showing the interest rate used in the calculation of withdrawal liability and how that interest rate is formulated.
- Actuarial documents with data and calculation that is used to create "basic pools."
- The interest rate(s) used to calculate Annual Funding of the Plan (Calculated at 100.4% funded for 2021).
- The interest rate and method used to calculate withdrawal liability for all years that the pension trust has operated.
- Withdrawal liability as calculated using the funding assumption rate of interest.
- Documents showing the treatment of other employers who have withdrawn from the plan including (1) The identities of all withdrawing employees; (2) the amount of liability issued; (3) the presumptive method calculation of liability for each employer and (4) the interest rate used to calculate "basic pools" for assessment of liability.

---

[1] See *New York Times Co. v. Newspaper & Mail Deliverers'-Publishers' Pension Fund*, 303 F. Supp. 3d 236 (S.D.N.Y 2018); *Sofco Erectors, Inc. v. Trustees of Ohio Operating Engineers Pension Fund*, 15 F 4th 407 (6th Cir. 2021)

## Carmody MacDonald

I hope that this review leads to a fair outcome that accurately reflects ERI's consistent contributions to the plan and the fact that those contributions left the pension fully funded upon ERI's.

Very truly yours,

CARMODY MacDONALD P.C.

Robert E. Eggmann

REE/ala